**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-1068

Robert Earl McCoy,       *
      *
    Appellee,       *
      *    Appeal from the United States
   v.       *    District Court for the
      *    Eastern District of Arkansas.
Larry Norris, Director, Arkansas       *
Department of Correction,       *
      *
    Appellant.       *

_____

Submitted: September 10, 1997
Filed: October 1, 1997

_____

Before FAGG, BOWMAN, and WOLLMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Larry Norris, Director of the Arkansas Department of Correction (the state[1]), appeals from the judgment of the District Court granting Robert Earl McCoy's petition for a writ of habeas corpus. We reverse.

_____

[1]We also will use "the state" when referring to A.L. Lockhart, Director of the Arkansas Department of Correction before Norris. Lockhart was the defendant in McCoy's previous habeas litigation.

McCoy is serving a forty-year sentence of imprisonment that was imposed upon him as a habitual offender following his November 1986 conviction for rape. In a bench trial (McCoy waived his right to trial by jury), the victim testified that in the early morning hours of April 5, 1986, she was sleeping with her seven-month-old son on a mattress on the floor in the living room of her ground floor apartment when McCoy somehow gained entry. She awoke to find him on top of her, telling her to do as he wished to avoid harm to herself and her child. He then raped her. The victim's husband testified that he unlocked the front door, entered the apartment, and found McCoy raping his wife. The two men struggled and the victim called the police. Soon after, police arrived and arrested McCoy. When officers searched McCoy they found a screwdriver in the pocket of his trousers. The first officer on the scene testified:

> I found in the, the middle bedroom, the south side of the apartment, I found a window that had been pried open from the outside, and the window pushed up. . . . It appeared as though the, the bottom right hand corner of the screen had had some type of flat instrument inserted between the - - The rail, and the actual screen had been pried up.

Trial Transcript at 27.

McCoy's defense was consent. He claimed that he had driven into the apartment complex parking lot because he believed he was too intoxicated to drive home. He "was nodding a few minutes" in his car when he saw a woman "beckoning" him from the doorway of the apartment building. Id. at 36, 37. This woman, whom McCoy did not identify as the victim, then approached his car and got in on the passenger side. McCoy testified that the woman consented to his coming to her apartment, gave him a key, and then left the car. According to McCoy, he knocked on the door of the victim's apartment, she let him in, and McCoy and the victim engaged in consensual sex until her husband came home.

The judge found McCoy guilty and the Supreme Court of Arkansas affirmed the conviction. See McCoy v. State, 732 S.W.2d 156 (Ark. 1987). McCoy's petition for state post-conviction relief was denied. See McCoy v. State, No. CR 87-46, 1988 WL 8793 (Ark. 1988). He then filed a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 (1988). The District Court denied the petition without a hearing. On appeal, we remanded for an evidentiary hearing, see McCoy v. Lockhart, 902 F.2d 1573 (8th Cir. 1990) (table), "on whether McCoy's counsel's decision not to introduce evidence concerning an alleged key to the victim's apartment that McCoy claimed was given to him by the victim constituted ineffective assistance of counsel." McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992) (McCoy II) (reviewing history of McCoy's habeas litigation).

At the hearing on remand, in addition to raising the issue concerning the key, McCoy presented testimony of the building superintendent at the victim's apartment complex. The superintendent stated that the bedroom window in the victim's ground level apartment, the presumed point of entry under the prosecution's theory of the case, could not have been forced open without doing permanent damage to the window screen, and that he found no such damage to the screen in the victim's apartment when he inspected it. The District Court granted McCoy's petition for habeas relief, finding that counsel was ineffective for failing to introduce evidence at trial concerning the key, and also for failing to present the superintendent as a witness on the issue of window entry. The state appealed. See id.

On appeal, we noted that McCoy's claim of ineffective assistance as it related to the window issue was procedurally defaulted, having not been raised in his state post-conviction petition. We further held that McCoy was unable to demonstrate cause for the default, the first step in the "cause and prejudice" test for overcoming procedural default so that the merits of a habeas claim can be considered by the court. See Murray v. Carrier, 477 U.S. 478, 485 (1986) (noting that petitioner "must show cause for the procedural default and prejudice attributable thereto"). Therefore, the merits of

McCoy's constitutional claims regarding the window entry evidence could be considered only if McCoy were able to show a miscarriage of justice, that is, actual innocence. See McCoy II, 969 F.2d at 651. The District Court had held that McCoy had done just that under the standard set forth in Carrier. That is, the court held that McCoy had demonstrated with the window entry evidence that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Carrier, 477 U.S. at 496. The court then concluded that McCoy received ineffective assistance of counsel, relying not only on counsel's failure to call the apartment superintendent to testify about the window screen but also on his failure to introduce the evidence concerning the key, and granted the petition for the writ.

Although we did not decide in McCoy II whether the court erred in reaching its conclusion of probable actual innocence under the Carrier standard, we nevertheless remanded with instructions for the District Court to reconsider its decision under the standard set forth in the recently decided case of Sawyer v. Whitley, 505 U.S. 333 (1992). In Sawyer the Supreme Court held that actual innocence of the death penalty must be shown "by clear and convincing evidence." Id. at 336. The McCoy II Court "conclude[d] that the new standard applies equally to challenges to a conviction, not just challenges to a death sentence." McCoy II, 969 F.2d at 651.[2] This of course is a more rigorous standard for a petitioner to meet than the "probably innocent" Carrier standard, so this Court held that the District Court should revisit the claim of actual innocence. We retained jurisdiction over the remanded case.

"On remand, the Magistrate Judge applied the Sawyer standard and concluded that McCoy's window-entry evidence does not clearly and convincingly demonstrate that no reasonable factfinder could have found McCoy guilty of rape." McCoy v. Lockhart, 980 F.2d 1162, 1163 (8th Cir. 1992) (footnote omitted), cert. denied, 509

---

[2]As discussed infra, we were shown the error of our ways in so concluding by the Supreme Court's opinion in Schlup v. Delo, 513 U.S. 298 (1995).

-4-

U.S. 930 (1993). The judge certified his findings and conclusions to this Court, and we agreed with his assessment of the case. See id. We also held that trial counsel's failure to introduce evidence concerning the key did not constitute ineffective assistance of counsel and that McCoy's habeas petition therefore should be denied. See id. at 1165. McCoy's petition for certiorari was denied.

McCoy now has filed another petition for a writ of habeas corpus, alleging ineffective assistance of counsel, denial of due process, "[d]enial of fair trial and equal protection of the law," and also alleging that "[c]hange of Constitutional Law by the United States Supreme Court warrants a review of this 'extraordinary case.'" McCoy faces the same obstacles with this successive habeas petition that he previously encountered when his constitutional claim regarding the window evidence was held to be abusive, and therefore defaulted, because he did not raise it in his state post-conviction proceedings. See Schlup v. Delo, 513 U.S. 298, 318 (1995) ("[A] habeas court may not ordinarily reach the merits of successive claims or abusive claims absent a showing of cause and prejudice.") (citations omitted). McCoy still cannot overcome the procedural bar by demonstrating cause and prejudice, and he does not contend that he can.

But with this petition, his claim of actual innocence, the gateway through which he must pass to have his claims considered (as he cannot show cause and prejudice), is no longer properly evaluated under the Sawyer "clear and convincing" standard. In Schlup, the Supreme Court held "that the Carrier 'probably resulted' standard rather than the more stringent Sawyer standard must govern" the actual innocence inquiry for claims that constitutional error occurred during the guilt phase of a habeas petitioner's trial.[3] Id. at 326.

_____

[3]Although Schlup was a guilt phase, death penalty case, we apply the Schlup standard to guilt phase, non-capital cases as well. See, e.g, Weeks v. Bowersox, 119 F.3d 1342, 1350 (8th Cir. 1997) (en banc).

Applying the Schlup standard to this second habeas petition, the Magistrate Judge to whom McCoy's case was assigned recommended that the petition be denied, notwithstanding his recommendation years before under the Carrier standard that the writ should issue. Applying Carrier as it was clarified by the Supreme Court's opinion in Schlup, the court determined that a different result was now required. The District Court, on de novo review, found that the Magistrate Judge's findings and conclusions were anomalous, because of his previous--and contrary--decision under the Carrier standard. See McCoy v. Norris, 958 F. Supp. 420 (E.D. Ark. 1996). The District Court concluded that the Schlup Court's elucidation of the "probably resulted" standard, which had been set forth but not elaborated upon in Carrier, should not change the result the Magistrate Judge originally reached applying that standard. Therefore, the court concluded, McCoy was entitled to pass through the actual innocence gateway. The court then considered McCoy's ineffective assistance of counsel claim on the merits and, finding a violation of his constitutional rights, granted McCoy's petition. The state appeals.

The first and possibly only question before us is whether McCoy can pass through the actual innocence gateway so that his claims of constitutional violation can be considered on the merits. If he cannot, we need not consider whether the court properly decided McCoy's claim of ineffective assistance of counsel. "We review de novo the district court's application of the Schlup standard to the facts of this case." Beeman v. Iowa, 108 F.3d 181, 184 (8th Cir. 1997), petition for cert. filed, No. 96-9398 (U.S. June 3, 1997).

There is a preliminary inquiry we must make before we can evaluate the strength of McCoy's claim of actual innocence. "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with *new* reliable evidence . . . ." Schlup, 513 U.S. at 324 (emphasis added). The District Court did not evaluate the "newness" of McCoy's evidence, but we think this is an important initial step in the analysis of a habeas petitioner's claim of actual innocence. Unless

-6-

McCoy has "evidence that was not presented at trial," we need not consider his probable actual innocence. Andrews v. Norris, 108 F.3d 163, 164 (8th Cir. 1997). We conclude that the "new" evidence McCoy offers is not new at all.

The allegedly new evidence concerned whether McCoy entered the victim's apartment through a bedroom window, and was presented at the December 1990 evidentiary hearing on McCoy's first habeas petition. At the time of the rape in April 1986, and at the time of the hearing, Luther Rollins was superintendent at the victim's apartment complex and was responsible for most of the maintenance, including periodic inspections of the property. He testified that he inspected the victim's apartment in February 1986 and again a few days after the victim and her family gave notice that they had moved out, which itself occurred a few days after the rape in April 1986. He noted no damage to the windows at either inspection. He had a screen and a window at the hearing, and he testified in response to questions from McCoy's habeas counsel as follows:

> Q   Now to gain entrance into these rear windows like the rear windows for Apartment 108 [the victim's apartment], can you pry open a screen or pry open a window with a screwdriver?
>
> A   Well, if you tear - - had problems with a screen you'd tear it. There'd be holes in that one.
>
> Q   You mean you'd have to tear the screen?
>
> A   Yeah, to get it off of there and bend it all up, and it wouldn't be put back in there.
>
> Q   Is there any way you can pry it open, like jimmy it open?
>
> A   Not without scarring it or tearing it up. I see what you're saying. But, see, if that would have been bent, that's the same screen been there ever since it's been put up there on that storm window right there.

Q   All right.  This is the same screen and window that you examined in February of 1986?

A   Same one.

Q   And the same one that you examined in April of 1986?

A   Sure did.

Q   And to reiterate, did you see any damage to this particular window or screen?

A   Sure didn't.

Hearing Transcript at 47-48.

Rollins had not been called to testify at McCoy's trial in 1986, four years earlier, but that does not mean that his testimony at the hearing constituted new evidence. Verdie Winstead, manager of the apartment complex in 1986 and still manager at the time of the habeas hearing, was called as a witness at the trial by McCoy's trial counsel. Winstead testified that Rollins had inspected the apartment after the victim's family moved out and found no damage.  On cross-examination by the prosecutor, Winstead stated that Rollins checked the windows and screens for damage during his inspection of the apartment, and then she had this exchange with the prosecutor:

Q   Okay.  If someone had, for instance, pried open a window, or something, and there wasn't any damage done to the window itself, that wouldn't be reflected on that report then?

A   Yes.  It is.  There are screens there.

Q   Well, on - -  If the screen itself hadn't been damaged, if they had just pried the window open, and there will be just some scratch marks, would that be reflected also?

A   Not scratch marks.  No.

Q  Okay.  Where are the - -

A   (Interposing)  But the screen would have to be reported.

Q   If the screen were damaged.

A   And you couldn't get to, and you couldn't get to the window without tearing the screen, because they are double glass.  They are windows.  The screen is on.  And there is one set of glass.  And then there's another set of glass.

. . .

Q  Okay.  So if a policeman had said that he had found some evidence of some pry marks there, you would dispute that?

A   If he say he found some marks on the window without the screen being taken off, I would dispute that.  Because he'd have to go through the screen in order to get to the window.

Q   But you yourself did not got [sic] out there and look at it, did you?

A   I didn't.  But I have a man who's capable.  Trustworthy.

Trial Transcript at 49-50.

It is apparent that the evidence at issue--whether McCoy could have entered the victim's apartment through the bedroom window without damaging the screen--was before the court at trial.  The fact that Rollins, a different witness, could have been called to testify to the same thing, and that he could have brought the window to court as an exhibit, does not convert Rollins's proffered testimony into new evidence that was not presented at trial.  It is more accurately described as cumulative evidence.  Because

the fundamental miscarriage of justice exception to procedural default is to be reserved for the "extraordinary case," Schlup, 513 U.S. at 321, we are reluctant to broaden the definition of new evidence to include new witnesses supplying essentially the same evidence previously received at trial, especially in cases such as this one where the original witness had no real credibility problems (in fact, the prosecution elicited her testimony regarding damage to the screen) and the new witness's testimony is not particularly compelling. We hold that Rollins's testimony is not new evidence.

But even if Rollins's testimony were genuinely new evidence of McCoy's innocence, McCoy would be unable to carry the burden of demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. Because this case was tried to the court without a jury, we have in the record comments made by the fact finder after he rendered his verdict, and they provide some insight into whether a reasonable fact finder informed by Rollins's testimony would have convicted McCoy. The judge said:

> What I heard from [the victim] was that she may have consented because she feared for her young son. She, or maybe somebody else, was at that front door. I don't know. Mr. McCoy may have observed those things. And he may have misinterpreted it. It may have been from [the victim], or somebody else. He ended up back there at that particular place. And, somehow or another, *whether he came through a window, or he came in the front door.* I just have to believe that this was a rape. . . . I choose to believe [the victim], and not Mr. McCoy.

Trial Transcript at 58 (emphasis added).

Clearly, McCoy's mode of entry into the victim's apartment was of little or no consequence to this eminently reasonable fact finder's conclusion that McCoy was guilty. The judge acknowledged that the victim well may have let McCoy into her apartment, but the judge further found that she did not consent to have sexual relations

-10-

with McCoy--a total stranger--once he was admitted. The judge simply did not believe McCoy. We conclude that the "new" window entry evidence would not have affected his credibility determination, or his verdict.

In sum, we hold that McCoy has not shown that he has reliable new evidence. But even if the testimony of Rollins were new evidence, McCoy cannot demonstrate that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329. Thus, McCoy cannot make his way through the actual innocence gateway, so we will not consider his constitutional claims on the merits.[4]

The judgment of the District Court is reversed and the case is remanded for entry of judgment denying McCoy's petition for habeas relief.

---

[4]The state argues that the District Court asserted jurisdiction over McCoy's habeas petition in violation of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 1996 U.S.C.A.A.N. (110 Stat.) 1214, which was signed into law April 24, 1996, just days after McCoy's successive petition was filed. The state contends that revisions made by the AEDPA to 28 U.S.C. §§ 2244 and 2254 required the court to summarily deny the petition. We do not decide the issue. As we noted relevant to a habeas petitioner in a capital case in Bannister v. Delo, 100 F.3d 610, 612 n.2 (8th Cir. 1996), cert. denied, 117 S. Ct. 2526 (1997), "Because we hold that [petitioner] is not entitled to relief under the prior more lenient habeas law, we do not address the state's contention that the Act is applicable to this appeal and precludes relief."

We do note, however, that in Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997), the Supreme Court held that the "negative implication "of the AEDPA "is that the new provisions of chapter 153 generally apply only to cases filed after the Act became effective." In other words, because Congress specifically addressed retroactive application of new chapter 154 (limiting habeas review in state capital cases where the state has met certain conditions), but did not address the retroactivity of the chapter 153 revisions (other habeas corpus provisions, including the amendments at issue here), the chapter 153 provisions of the AEDPA ordinarily will not have retroactive application.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT