## United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 96-1892

_____

Joseph Amrine,                          *
                                        *
            Appellant,                  *
                                        *  Appeal from the United States
      v.                                *  District Court for the
                                        *  Western District of Missouri.
Michael Bowersox, Superintendent,       *
Potosi Correctional Center,             *
                                        *
            Appellee.                   *


_____

Submitted: April 15, 1997
                    Filed: November 3, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY,[1] Senior Circuit Judge,
     McMILLIAN, FAGG, BOWMAN, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS
     SHEPPARD ARNOLD, and MURPHY, Circuit Judges, en banc.

_____

MURPHY, Circuit Judge.

     Before the court is Joseph Amrine's motion to remand to the district
court prior to the briefing on his appeal from the denial of his petition
for a writ of habeas corpus under 28 U.S.C. § 2254.  Amrine seeks a remand
because of new evidence discovered

_____

[1] Judge Henley participated in the consideration of the case and concurred in the
result at conference but died before the opinion was filed.

after his petition was ruled on by the district court.[2]  He says this new evidence shows him actually innocent of the murder of a fellow prison inmate for which he has been sentenced to death.  He wants to introduce at an evidentiary hearing testimony from the eyewitnesses who made the case against him at trial because they have now all sworn that that testimony was false and induced by pressure.  He asserts this evidence meets the gateway test of Schlup v. Delo, 115 S. Ct. 851 (1995), so that the constitutional claims found by the district court to have been procedurally barred should be considered on the merits before the appeal proceeds.

I.

Amrine was convicted of murdering Gary Barber on October 18, 1985 in a recreation room at the Potosi Correction Center in Cole County, Missouri. Barber was stabbed in the back with an ice pick at a punching bag.  There were two correctional officers and approximately 45 to 50 inmates in the room at the time.  Amrine has always maintained that he did not kill Barber and that he was involved in a poker game in a different area of the room at the time of the stabbing.

Amrine was charged with first degree murder, and the state relied primarily on three witnesses at trial.  Inmates Randy Ferguson and Jerry Poe were the only people who claimed to have seen the killing, and they both testified that they saw Amrine stab Barber.  A third prisoner, Terry Russell, testified that he had not seen the murder but that there were bad feelings between Amrine and Barber, that Amrine had threatened Barber a week before the killing, and that Amrine admitted his guilt to him afterward.  Although he said he had not been in the recreation room at the time of the slaying, Russell had suggested to investigators that Amrine was the killer.  Russell also testified that Barber and he had been placed in detention for fighting with each other and that

_____

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

they had been released back into the general population only hours before the stabbing.

Amrine offered testimony to show he could not have been the killer and to suggest that Terry Russell was. Six prisoners[3] who had been in the recreation room testified that Amrine was involved in a poker game in a different part of the room at the time of the stabbing. Five[4] of them saw Barber turn and chase after someone after he was stabbed, before he collapsed and died. Three identified Terry Russell as the person being chased by Barber; none of them named Amrine.

The two correctional officers who had been in the recreation room testified that they first became aware something was wrong when they saw Barber run across the room toward another inmate before he collapsed. Officer John Noble was called by the state and initially testified that he was sure the person Barber had been chasing was Terry Russell and that he had told another officer this shortly after the stabbing. After repeated questioning by the prosecution, Noble indicated he was not certain that Russell was the one being chased by Barber and that Russell and Amrine were similar in size, coloration, and hair style. A third correctional officer stationed outside of the room testified that he saw Russell leave the recreation room before the stabbing, and a fourth said he saw Russell both inside and outside the recreation room after the incident.

The state's case did not rest on physical evidence. Although a small amount of blood was found on Amrine's clothing, there was no evidence as to its age or source. A state serologist testified that he had been unable to determine the blood type because

_____

[3]Steven McChan, John Ball, Cornelius Dodson, Brian Strothers, James Louis, and Omar Hutchinson.

[4]McChan, Dodson, Strothers, Louis, and Hutchinson.

there was too little to provide a sample that could be tested.  The jury found Amrine guilty of first degree murder and sentenced him to death.

After the Missouri Supreme Court affirmed his conviction and sentence, State v. Amrine, 741 S.W.2d 665 (Mo. 1987) (en banc), Amrine moved for post-conviction relief.  The state court held a hearing at which Randy Ferguson and Terry Russell recanted their trial testimony.  Ferguson now testified that he had actually been in the bathroom at the time of the stabbing and did not witness it, but that he had been pressured by Missouri officials into falsely testifying at trial that he had seen Amrine stab Barber.  Ferguson testified that George Brooks, an investigator for the state prison system, and Richard Lee, an investigator for the Cole County prosecutor's office, had thrown him up against a wall, choked him, and threatened him with a "snitch jacket"[5] if he did not comply.  After Ferguson agreed to testify, he was placed in protective custody, and an unrelated charge against him was dismissed.  Terry Russell also testified that he had been pressured into giving false testimony against Amrine.  He stated that his trial testimony, claiming he had heard Amrine threaten Barber and confess to his killing, had been false and that Brooks and a deputy sheriff from Cole County named John Hemeyer had  threatened he would be charged with the murder if he did not give the desired testimony.[6]  Investigators Brooks and Lee testified and denied pressuring Ferguson and Russell to implicate Amrine, but they acknowledged that a charge against Ferguson had been dismissed and that he had been placed in

---

[5]A "snitch jacket" refers to the release of an inmate back into the general prison population after word is spread that the inmate has testified against another prisoner.

[6]Russell also testified that at the time of Amrine's trial he had been scheduled to be paroled in a few months so he cooperated with Brooks and Hemeyer because he was afraid another charge would prolong his imprisonment.  Russell was subsequently released, convicted on new charges, and sentenced to two life sentences, and he testified that he was recanting his trial testimony because he no longer feared being charged with Barber's murder since he was now already serving two life sentences.

protective custody in exchange for his testimony.  Although featured in Russell's testimony, deputy sheriff Hemeyer did not appear as a witness.

The state trial court denied Amrine's post conviction motion for relief.  The court found that Ferguson's testimony about threats was "unworthy of belief" and designed merely to help a fellow inmate.  It also found Russell's testimony not credible, but motivated by the desire to gain the good will of Amrine so that he could be released from protective custody.  Amrine appealed, and the Missouri Supreme Court affirmed.  Amrine v. State, 785 S.W.2d 531 ( Mo. 1990) (en banc).

## II.

Amrine then filed the habeas petition now before the court.  The amended petition alleged fifty claims of constitutional error and requested a hearing to present evidence.  The district court denied relief and the request for an evidentiary hearing.  It divided his claims into two groups: claims which had been properly presented in state court and those which had not. The first group was considered on the merits and rejected.  The claims not properly presented in state court were held to be procedurally defaulted and therefore barred.

Among the constitutional claims the district court rejected on the merits are thirteen which alleged ineffective assistance of trial counsel. Amrine alleges his  counsel was ineffective because of inadequate investigation and cross examination of Randy Ferguson, Terry Russell and Jerry Poe and because of failure to call an additional inmate witness, Ronnie Ross. Amrine also alleges trial counsel had a conflict of interest and failed to investigate the blood evidence or to object to jury instructions, the prosecutor's improper closing argument, and Amrine's appearance in front of the venire panel in shackles and leg restraints. Amrine argues counsel was ineffective during the penalty phase for failing to call any witnesses other than Amrine and for not

objecting to evidence about the deterrent effect of the death penalty.[7]

A variety of constitutional challenges to the guilt phase of Amrine's trial are raised in the claims held to be defaulted. Amrine alleges that his rights to due process were violated because there was insufficient evidence to support his conviction, especially in light of the recantations of Ferguson and Russell, and the state court did not set aside the verdict or order a new trial. Amrine contends his counsel was ineffective at trial for advising him in front of the jury to exercise his fifth amendment right against self incrimination, for failing to object to the appearance of defense witnesses in leg shackles and restraints or to a jury selection process which led to an all white jury, and for not submitting appropriate jury instructions. Amrine also claims that his rights under the fifth, sixth, eighth, and fourteenth amendments were violated because the jury was improperly selected and instructed, the prosecutor engaged in improper argument, and he was denied his right to confront witnesses by the prosecutor's refusal to provide the name of the person who had provided information that focused the investigation on him.

There are also defaulted claims attacking the constitutionality of the penalty phase of his trial. Amrine alleges his trial counsel was ineffective for failing to develop mitigating evidence of brain injury, to request a mental evaluation, and to object to unsubstantiated testimony regarding uncharged misconduct. He also alleges that the jury instructions and the prosecutor's closing arguments violated the eighth and fourteenth amendments, that he was denied access to necessary expert witnesses in

---

[7]The district court also rejected nineteen other constitutional claims on the merits, including allegations that the state court violated Amrine's due process rights by denying his motion for a new trial or a judgment of acquittal based on the recantations by Ferguson and Russell and by its jury instructions; that the prosecution withheld material exculpatory evidence; that his appellate counsel was ineffective; that the Missouri statute defining first degree murder violates due process; and that his death sentence was in violation of the eighth amendment.

-6-

violation of the fifth, sixth, eighth and fourteenth amendments, that testimony of uncharged misconduct violated his eighth and fourteenth amendment rights, and that the Missouri death penalty scheme is cruel and unusual.

The district court declined to reach the merits of the defaulted claims because it concluded Amrine had not shown cause and prejudice to excuse his default, see Sawyer v. Whitley, 505 U.S. 333, 338 (1992), and had not presented sufficient evidence of actual innocence under Schlup v. Delo, 115 S. Ct. 851 (1995). The district court noted that in support of his actual innocence Amrine cited the testimony of Ferguson and Russell from the post conviction hearing. The court recognized that their testimony contradicted what they had said at trial, but it rejected Amrine's actual innocence claim "in light of the continued existence of witness Poe's testimony." Amrine v. Bowersox, No. 90-0940, slip op. at 16 (W.D. Mo. Feb. 26, 1996).

The district court reasoned:

> Despite the new evidence of witnesses Russell and Ferguson recanting their testimony, the testimony of Jerry Poe against petitioner remains unchallenged. At trial, Poe testified that he also witnessed petitioner stab Gary Barber. While petitioner now attempts to characterize Poe as having a history of mental illness and unusual deviant behavior, he has presented no evidence to substantiate these claims. Petitioner claims that Poe was taking an antipsychotic medication at the time of the murder and possibly at trial. However, at trial, Poe testified that while he was prescribed medication, he was not taking any at the time of the murder and had not taken any on the day of the trial. Therefore, this Court finds no reason to view Poe's testimony as not credible.

> In instances where the petitioner sentenced to death claims he is factually innocent of the crime, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 115 S. Ct. at 867. The Court

> concludes that despite the new evidence presented at trial [sic] by witnesses Russell and Ferguson, it cannot be said that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the continued existence of witness Poe's testimony.

Amrine v. Bowersox, No. 90-0940, slip op. at 15-16 (W.D. Mo. Feb. 26, 1996) (citations omitted).

After Amrine's appeal was filed, successor counsel[8] located new evidence to support Amrine's actual innocence and filed the pending motion to remand. The major piece of new evidence is an affidavit of Jerry Poe, one of the two witnesses who had testified at trial that they had seen Amrine stab Barber, and the witness whose previously unrecanted testimony was the focus of the district court's denial of Amrine's Schlup claim.[9] Poe now disavows his prior testimony. He swears that he did not see the killing, but that he gave false testimony that he had and that Amrine was the killer because of pressure from George Brooks and John Hemeyer. Brooks had threatened him with a snitch jacket if he would not cooperate, and both officials repeatedly

---

[8]Amrine's counsel was allowed to withdraw after filing the appeal, and new counsel were appointed.

[9]Two additional eyewitness affidavits were submitted to support Amrine's innocence. One is from Kevin Dean, a former inmate, who swears he saw the stabbing, that Terry Russell was the killer, and that Amrine was playing cards in a separate part of the recreation room at the time. Dean states that he was closely observing what was happening because he was the Grand Sheik of the Moors, there were "problems between the Moors and the Aryan Brothers," and rumors that Barber "was going to be hit." He also states that Amrine's attorney never talked to him and that he was willing to testify for Amrine but was never called. In the other affidavit inmate Edward Epps asserts he saw the stabbing, that Barber chased his assailant after being hit, that Amrine was not the killer, and that Epps is reluctant to name the real assailant because he remains incarcerated.

rehearsed the false testimony with him and modified it as the time for trial approached.  The motion to remand indicates that at the time Amrine's habeas petition was pending in the district court, Poe could not be located.  Poe was subsequently returned to the custody of Missouri authorities, located by Amrine's new counsel, and interviewed.

Amrine argues he is entitled to a remand so that he may present this new evidence of actual innocence to the district court in order to obtain review under Schlup of his otherwise barred constitutional claims.  The state responds that Amrine's claim is really a free standing innocence claim under Herrera v. Collins, 506 U.S. 390 (1993), that the evidence is not newly discovered, and that Amrine merely seeks to bolster his claims.  If the motion is granted, the state requests that this court retain jurisdiction and remand for disposition within 180 days.

III.

In Schlup v. Delo the Supreme Court held that a petitioner can obtain review of procedurally defaulted claims if he produces reliable new evidence not available at trial which demonstrates that it is more likely than not, that with this evidence no reasonable juror would have convicted him.[10]  115 S. Ct. at 867.  If a petitioner presents sufficient evidence of actual innocence, he should be allowed through this gateway permitting him to argue the merits of his underlying constitutional claims.  Id. at 861.  In deciding whether a petitioner has made the necessary showing of innocence, a federal court must make its own determination of whether the "probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial" is sufficient to warrant consideration of the otherwise barred claims.  Id. at 869; Bannister v. Delo,

---

[10]For this type of situation the Supreme Court decided to adopt the standard in Murray v. Carrier, 477 U.S. 478 (1986), rather than the one applied by the lower courts from Sawyer v. Whitley, 505 U.S. 333 (1992), which required clear and convincing evidence that no reasonable juror would have convicted.

100 F.3d 610, 617 (8th Cir. 1996), cert. denied, 117 S.Ct. 2526 (1997). The underlying reason for an actual innocence gateway is that the "quintessential miscarriage of justice is the execution of a person who is entirely innocent." Schlup, 115 S. Ct. at 866. If a petitioner presents evidence of his actual innocence so strong that a court cannot have confidence in the outcome of his state trial, it should not allow his execution unless it is also satisfied that his trial was free of nonharmless constitutional error. Id. at 861.

Amrine asserts that his conviction and sentence are the result of an unconstitutional trial and that his new evidence is reliable and sufficiently probative to make it more likely than not that no reasonable juror would have voted for conviction if the evidence had been before the jury. He says he is therefore entitled to review of his otherwise barred claims.

The state of Missouri argues that Amrine really raises a Herrera actual innocence claim rather than a Schlup gateway claim. In Herrera the petitioner presented affidavits that his brother had actually committed the murder of two Texas police officers and contended that this evidence of his actual innocence would make his execution unconstitutional.[11] Amrine's claim is unlike Herrera's because he does not seek relief on the basis that he is actually innocent, but rather on the basis of an unconstitutional trial. He raises actual innocence as a means to avoid a procedural bar to consideration of his constitutional claims so his gateway claim is properly considered under Schlup.

Like Amrine, Schlup was a Missouri prisoner who had been convicted of participating in the murder of a fellow inmate and sentenced to die. The state's case at

---

[11]It was not necessary in Herrera to decide whether a truly persuasive demonstration of actual innocence in a capital case would itself render an execution unconstitutional because Herrera failed to make such a showing. 506 U.S. at 417; see also id. at 420-21 (O'Connor J., concurring).

-10-

trial consisted primarily of eyewitness testimony from two correctional officers who said they had seen Schlup holding the victim while another inmate stabbed him. Schlup denied involvement and presented a videotape showing him entering the dining hall shortly after the stabbing. He claimed he could not have reached the hall at the time shown on a clock if he had participated in the murder. He was convicted and exhausted his state remedies before seeking habeas relief on a successive petition which raised actual innocence to overcome procedural bars. His new evidence consisted of affidavits from fellow inmates who had witnessed the stabbing and said Schlup did not participate and a transcript of an inmate interview contained in the state's responsive filings which supported his contention that he had reached the dining hall too soon after the murder to have been involved. Schlup lost in the lower courts, but the Supreme Court found that the new evidence cast doubt on his involvement, and that if the evidence were true, it would affect a conscientious juror's decision on whether his guilt had been established beyond a reasonable doubt. 115 S. Ct. at 869. The case was remanded for consideration by the district court of Schlup's new evidence under the standard the Court had adopted, with opportunity for review of his barred constitutional claims if his gateway claim were established.[12]

In order to pass through the actual innocence gateway as Schlup did, a petitioner must support his claim of innocence with reliable new evidence, whether exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. Schlup, 115 S. Ct. at 865. If new evidence calls into question the credibility of the witnesses at trial, the habeas court may itself have to make credibility assessments, id. at 868, and a remand for an evidentiary hearing may

---

[12]On remand the district court held an evidentiary hearing and found that Schlup had made a sufficient showing of actual innocence to entitle him to a hearing on his barred claims. Schlup v. Delo, 912 F. Supp. 448, 455 (E.D. Mo. 1995). Chief Judge Hamilton subsequently concluded in an unpublished order that Schlup had been denied effective assistance of counsel at trial. She granted a writ which resulted in the release of his death sentence.

be needed.  Id. at 869; Bannister, 100 F.3d at 616; Battle v. Delo, 64 F.3d 347, 352 (8th Cir. 1995), cert. denied, 116 S. Ct. 1881 (1996).  An actual innocence inquiry is necessarily fact intensive and the district court may be the most appropriate forum to consider whether the new evidence is reliable and what "reasonable triers of fact  are likely to do."  Schlup, 115 S. Ct. at 868-69.  A petitioner can meet the standard even if "the trial record contained sufficient evidence to support the jury's verdict" because the district court must consider "the probative force" of the new evidence together with what was produced at trial.  Id. at 869.

Amrine has come forward with evidence not previously available which directly contradicts the key evidence against him at trial.  He now has a sworn recantation by the only previously unchallenged eyewitness, Jerry Poe.  Poe's affidavit contradicts what he said at trial.  He denies having seen the killing and says his identification of Amrine as the killer was false and induced by pressure from Brooks and Hemeyer.  He claims that Brooks threatened him with a snitch jacket and that both officials rehearsed the false testimony with him.  These are the same individuals who Terry Russell claims procured his perjured testimony, and Ferguson testified that Brooks pressured him also to testify against Amrine, together with investigator Lee.  Neither Poe nor deputy sheriff Hemeyer testified at the post conviction hearing, so no court has yet had the opportunity to assess their credibility on these issues and how it might affect the assessment of the testimony which was previously available.

If credited, the recantations by all three of the trial witnesses who implicated Amrine in the murder do more than suggest that he is actually innocent.  The state trial court did not credit the recantations of either Russell or Ferguson, but it did not have all of the evidence before it because neither Poe nor Hemeyer testified at its hearing.  We presume state court findings are correct in a habeas action unless it appears there was some deficiency in the fact finding process.  28 U.S.C. § 2254(d) (1994); Battle, 64 F.3d at 352.  Here, Poe and Hemeyer have never testified on the issues related to the reliability of the trial evidence and it is not known what effect their testimony might

have.  Dean and Epps also claim to have seen the killing and to know that Amrine did not do it, and Dean swears that the killer was Terry Russell.  On a gateway claim of actual innocence, a federal court must consider all the evidence to make its own determination whether there is a sufficient showing to justify consideration of a petitioner's otherwise barred claims, and this calculus may involve making credibility determinations of key witnesses. Schlup, 115 S. Ct. at 867-68; Battle, 64 F.3d at 352; see also Keeny v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992) (petitioner's failure to develop material facts in state court is excused if a fundamental miscarriage of justice  would otherwise result).

     The strength of Amrine's showing at this point raises the real possibility that his case may be an example of the "extremely rare" scenario for which the actual innocence exception is intended.  Schlup, 115 S. Ct. at 865.  Amrine's showing of actual innocence is stronger than that in Schlup because neither of the state's two eyewitnesses to that killing ever recanted any part of their testimony implicating Schlup, and here all three of the state's key witnesses against Amrine have recanted.  If the trial testimony of Poe, Ferguson, and Russell were not credited, there would appear to be no evidence implicating Amrine in Barber's murder.  Unlike cases rejecting a gateway claim, Amrine's evidence, if found reliable, would almost certainly establish his actual innocence.  Cf. Bannister, 100 F.3d at 617 (even if affidavit was credited, it did not establish actual innocence); Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996) (new evidence did not establish actual innocence); Battle, 64 F.3d at 353 (affidavits containing "very little that was not already before the jury" and hearsay and disputed testimony did not establish actual innocence); Murray v. Delo, 34 F.3d 1367, 1375 (8th Cir. 1994) (even if believed, affidavits did not show actual innocence).
     A remand under Schlup is available not as an opportunity to bolster claims or to seek to find new evidence, but rather as "an opportunity for a petitioner, aggrieved by an allegedly defective trial and having inexcusably defaulted the available remedies, to raise such a strong doubt to his guilt that, in hindsight, we cannot have confidence in

-13-

the trial's outcome unless it was indeed free of harmless error."  Battle, 64 F.3d at 354; see also Schlup, 115 S. Ct. at 861.  A remand is not appropriate if the petitioner only makes bare allegations that he can develop evidence of actual innocence after a remand, see, e.g., Weeks v. Bowersox, 119 F.3d 1342, 1352-1353 (8th Cir. 1997) (en banc); Bannister, 100 F.3d at 617; Battle, 64 F.3d at 354, but Amrine presents concrete evidence from eyewitnesses that in the context of the available evidence against him could establish his innocence.  Like the petitioner in Schlup, and unlike those in Bannister and Battle, Amrine has consistently maintained his innocence and has produced new evidence to raise doubt about his guilt.  A remand would simply give him an opportunity to present this evidence to the forum best suited to undertake the "evidentiary balancing inherent" in any actual innocence claim, Battle, 64 F.3d at 350, and a limited scope will prevent a fishing expedition on unrelated issues.

This is Amrine's first habeas petition, and he has presented new evidence before his appeal is briefed that relates directly to a key issue decided against him in the district court.  In ruling against Amrine on his actual innocence claim the district court focused on the continued existence of Poe's unchallenged testimony which has now been undermined.  It remains to be seen, of course, if the new testimony is credible, but the resolution of Amrine's Schlup claim controls whether a number of his other related constitutional claims will ever be addressed on the merits.  Since the evidence Amrine presents in his motion relates to the basis of the district court's decision, and since that court is best able to evaluate testamentary evidence, a remand is appropriate to consider Amrine's additional evidence in the context of his claim of actual innocence.  See Schlup, 115 S. Ct. at 869; Battle, 64 F.3d at 352.   Although an evidentiary hearing is not required "if development of the claim would not establish actual innocence," Bannister, 100 F.3d at 617, Amrine has made a sufficient showing to require such a hearing since, if credited, his evidence could establish actual innocence.

A remand is in the interest of the efficient administration of justice and will prevent a piecemeal appeal.  At this point no briefs have been prepared, and we stand

-14-

on the threshold of this appeal. There are times when a remand makes sense at this stage. See, e.g., Bowman, 85 F.3d at 1342; Murray, 34 F.3d at 1370-71. In this case it will allow all issues to be briefed and developed at one time so that they may be considered together in their full context. If briefing were to go forward on the record as it now stands, Amrine would have to bring an additional proceeding in order to pursue his Schlup claim on the new evidence. This court would then have to rule in two stages on the constitutional claims growing out of Amrine's trial, even though some of the claims are quite interrelated. To force Amrine unnecessarily to present his case in separate filings "would be a needless procedural complication." Simmons v. Lockhart, 856 F.2d 1144, 1145 (8th Cir. 1988).

A remand will simply allow consideration of all the possibly relevant evidence at one time as required by Schlup, 115 S. Ct. at 867, and by reasons of equity and judicial economy. See, e.g., Bowman, 85 F.3d at 1342; Murray, 34 F.3d at 1373. The district court which is already familiar with the whole context of this habeas case will have the opportunity on remand to assess the credibility and reliability of the new evidence, and if it finds Amrine has met the Schlup test, it will reach the otherwise barred constitutional claims. Amrine is entitled to full consideration of this first habeas petition, and a remand will allow all issues to be considered together on appeal and could protect "against the kind of miscarriage of justice that would result from the execution of a person who is actually innocent." Schlup, 115 S. Ct. at 854.

IV.

Under the circumstances a limited remand is appropriate. The limited remand will not permit the filing of additional claims, but will be restricted to consideration of Amrine's Schlup claim in light of the newly produced evidence, and if that claim is made out, to consideration of the constitutional claims previously held by the district court to be barred.

-15-

On remand, the district court should conduct an evidentiary hearing to determine first whether the evidence Amrine presents is new and reliable. The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence. See e.g., Bannister, 100 F.3d at 618; Smith v. Armontrout, 888 F.2d 530, 542 (8th Cir. 1989). The court will also need to determine if the evidence is reliable by making its own credibility determinations where necessary. Schlup, 115 S. Ct. at 868. The state will also be able to present its position fully on these issues before the court makes its findings of fact.

If the evidence is new and reliable, the district court should then consider if Amrine's evidence meets the Schlup standard entitling him to consideration of his barred constitutional claims. A petitioner's showing of innocence is not insufficient just because the trial record may contain sufficient evidence to support the jury verdict. Id. at 869. When determining the impact of evidence unavailable at trial, a court must make its final decision based on the likely cumulative effect of the new evidence had it been presented at trial. Battle, 64 F.3d at 353 n.11, (citing Kyles v. Whitley, 115 S. Ct. 1555 (1995)). The court is called upon to consider all the evidence, including any new evidence, and make a probabilistic determination of what a reasonable, properly instructed juror would do. Schlup, 115 S. Ct. at 868. The appropriate inquiry is whether it is more likely than not that in light of the new evidence no reasonable juror, "conscientiously following the judge's instruction requiring proof beyond a reasonable doubt, would vote to convict." Id. at 869. Finally, if the district court concludes Amrine meets the Schlup standard, it should consider the previously barred claims on the merits and in context.

The state requests that any remand be limited to 180 days which should be ample time for the district court to hold an evidentiary hearing and to determine whether Amrine can make out his actual innocence claim. We do not know now what that outcome will be, however, and if Amrine succeeds on that claim, the district court must proceed to rule on the previously barred claims. While it is to be hoped that that stage

could also be concluded within the suggested 180 days, we are reluctant to set too specific a time limit if it could interfere with the interests of justice. We therefore refrain from setting an absolute time limit on the number of days for the remand, but we are confident the district court will use its best efforts to resolve all issues as soon as possible.

V.

For these reasons, the motion to remand is granted and the case is remanded for limited purposes to the district court for proceedings consistent with this opinion. The district court shall certify its findings and conclusions as expeditiously as possible, and this court will retain jurisdiction in the meantime.

BEAM, Circuit Judge, dissenting.

Chief Justice Rehnquist observed in Schlup v. Delo that the "exegesis of the Carrier standard" in determining actual innocence in a habeas action "will inevitably create confusion in the lower courts." 115 S. Ct. 851, 870 (1995) (Rehnquist, C.J., dissenting). The court's opinion proves the point. In attempting to implement Schlup, the court exacerbates the confusion inherent in death penalty habeas litigation and opens the door to repetitive Schlup-type hearings in the federal district courts of this circuit by encouraging death-sentenced petitioners to release new and different bits of evidence, piecemeal, at various stages of the habeas proceeding.[13] From this

---

[13]As Justice Blackmun pointed out in his dissent from denial of certiorari in Callins v. Collins, 510 U.S. 1141, 1145 (1994), each passing attempt to apply court-developed habeas rules actually seems to erode any perception that we have established a system that accords proper deference to the competing concerns of comity, finality, fairness and due process in death penalty habeas adjudication. A similar theme was advanced in a recent American Bar Association Resolution adopted by its House of Delegates in February 1997. Report No. 107, Section of Individual Rights and Responsibilities of the Litigation Section of the American Bar Ass'n (adopted February 1997).

unfortunate result, I dissent.

It is clear to me that this appeal presents a freestanding Herrera claim and not a Schlup claim. Compare Schlup, 115 S. Ct. at 860 with Herrera v. Collins, 506 U.S. 390 (1993). Amrine advances exculpatory evidence, almost all of it at odds with earlier testimony given by the same people under oath at the state court trial. Some of his current allegations, however, were not presented to the district court prior to its entry of the judgment that is the subject matter of this appeal. All of the information, if truthful, was available prior to the filing of the habeas petition.[14]

The court incorrectly concludes that Amrine has presented a Schlup gateway claim and not a "freestanding" actual innocence claim. Herrera, 506 U.S. at 405. The distinction is critical because freestanding claims are judged by the "extraordinarily high" Herrera standard which requires a showing of unquestionable innocence.[15] Schlup, 115 S. Ct. at 862 (citing Herrera, 506 U.S. at 417). In order to have his claim judged under the more lenient Schlup standard, Amrine must link his proffer of new evidence to a trial error of constitutional magnitude.[16] Schlup, 115 S. Ct. at 861. See

---

[14]As noted by the court, Amrine's initial federal habeas lawyer was allowed to withdraw after the appeal was filed. New counsel has presented an affidavit from Jerry Poe, an inmate eyewitness who testified at trial and Kevin Dean and Edward Epps, fellow prisoners of Amrine who did not testify at trial. It can hardly be said they were unknown or unavailable to Amrine and his lawyers at any relevant time.

[15]These affidavits fall far short of establishing that Amrine is "unquestionably innocent" of the crime for which the jury convicted him.

[16]As I read the court's opinion, the district court is required, upon finding that the gateway has been opened, to consider the merits of any and all new constitutional claims whether or not they are related to the purportedly new and relevant evidence. I can find no support for such a result.

-18-

also, <u>McCoy v. Norris</u>, No. 97-1068, 1997 WL 600040 at *3 (8th Cir. Oct. 1, 1997) (new evidence must support constitutional allegations).  The court acknowledges this distinction, but does not apply it.

The only constitutional error linked with Amrine's new evidence is a claim that  "his rights to due process were violated because there was insufficient evidence to support his conviction, especially in light of the recantations of Ferguson and Russell."  <u>Ante</u>, at 6.[17]  The Supreme Court has held that claims of insufficient evidence are subject to federal habeas review.  <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). However, a <u>Jackson</u> claim cannot be the constitutional basis for the <u>Schlup</u> gateway because the two inquiries are fundamentally incompatible.  "[T]he sufficiency of the evidence review authorized by <u>Jackson</u> is limited to 'record evidence.'"  <u>Herrera</u>, 506 U.S. at 402 (quoting <u>Jackson</u>, 443 U.S. at 318).  To allow <u>Jackson</u> to serve as the constitutional predicate for a <u>Schlup</u> gateway claim would conflate two separate inquires.  <u>Jackson</u> prohibits consideration of evidence outside the record; <u>Schlup</u> requires consideration of evidence outside the record. Similarly, under <u>Jackson</u>, new credibility determinations are prohibited, while <u>Schlup</u> often requires new credibility assessments.  <u>Compare</u> <u>Jackson</u>, 443 U.S. at 319 <u>with</u> <u>Schlup</u>, 115 S. Ct. at 868.

Furthermore, I cannot fathom how Amrine can use <u>Jackson</u> to avoid the <u>Herrera</u> standard if Herrera himself could not.  Like Herrera, Amrine produced affidavits on appeal in which witnesses claimed that pressure from law enforcement prevented them from identifying the real killer at trial. <u>Herrera</u>, 506 U.S. at 398 n.4.  Like Herrera,

---

[17]Amrine does not claim that his attorney was constitutionally deficient in failing to discover these recantations at trial, <u>see</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); nor does he claim that the prosection knew of this exculpatory evidence and failed to disclose it.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Indeed, there is no legal or factual basis for such claims.

-19-

Amrine invokes the due process clause to support his claim of actual innocence. Id. at 407. Like Herrera, Amrine's claims are thinly disguised attempts to convince us that his jury reached the wrong conclusion. However, "'[f]ederal courts are not forums in which to relitigate state trials.'" Herrera, 506 U.S. at 401 (quoting Barefoot v. Estelle, 463 U.S. 880, 887 (1983)).

Assuming a Jackson claim could serve as the constitutional violation predicate to Schlup, Amrine still has not alleged a colorable Jackson claim. The relevant question under Jackson is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis omitted). Here, there is no doubt that a rational trier of fact, acting on the evidence presented at trial, could have found the essential elements of the crime beyond a reasonable doubt.

Even if Amrine had stated a Schlup gateway claim, he would not be entitled to relief. The court concedes that "[i]t remains to be seen, of course, if the new testimony is credible." Ante at 14. Later in the same paragraph, though, the court concludes "[a]lthough an evidentiary hearing [in district court] is not required if development of the claim would not establish actual innocence, Amrine has made a sufficient showing to require such a hearing since, if credited, [by whom is unexplained by the court but presumably by a jury] his evidence could establish actual innocence." Id. (quotation omitted) (emphasis added). I confess I am not certain what message this paragraph conveys as a whole. I am certain, however, that the court is judging the credibility of Amrine's various affidavits and is finding them sufficiently credible and reliable, presumably when compared with the testimony at the state trial, to require a district court hearing on Amrine's "Schlup claim."

This approach violates Schlup for at least two reasons. First, nothing in Schlup, or any other case I have been able to find, authorizes an appeals court to make

-20-

credibility and reliability findings on this type of proffer. Second, <u>Schlup</u> specifically reserves this credibility and reliability inquiry for the district court. Justice O'Connor, the decisive fifth vote in <u>Schlup</u>, explained that, "a petitioner does not pass through the gateway . . . if <u>the district court</u> believes it more likely than not that there is any juror who, acting reasonably, would have found the petitioner guilty beyond a reasonable doubt. . . . <u>[T]he Court does not disturb the traditional discretion of district courts in this area</u>. . . ." <u>Schlup</u>, 115 S. Ct. at 870 (O'Connor, J., concurring) (emphasis added). In Amrine's case, the district court, with most of this "new evidence" in mind, has determined that an evidentiary hearing is unnecessary. Indeed, the court seems to acknowledge the district court's unique discretion by noting that in <u>Schlup</u>, Chief District Judge Hamilton, not the circuit court, decided on the need for a hearing for Schlup in the first instance and then, after hearing, found an "actual innocence" gateway that was open wide enough for consideration of Schlup's defaulted constitutional claims. <u>Ante</u>, at 11 n.11.[18]

The clear implication of the court's opinion is that any time a death-sentenced petitioner comes forward, at any stage of the habeas proceeding-- even appeal of that proceeding--with a recanting witness or other sworn allegations, even from convicted felons who have testified to the contrary under oath at trial; and the evidence, if credited by a well instructed trial jury, could lead to an acquittal; then, as a matter of course, an evidentiary hearing must be held in the district court. At that hearing, the district judge balances the evidence; retries the contested issues of guilt and innocence; and may set aside the state court verdict, if the district court concludes that any defaulted constitutional claim has merit. I do not believe that <u>Schlup</u> or any other Supreme Court case supports such a sweeping result. As Justice O'Connor observed in <u>Schlup</u>, there is a " need to ensure that the actual innocence exception remains only

---

[18]Particularly problematic in this case is that by finding the evidence sufficiently credible to dictate that the district court must hold an evidentiary hearing, this court has, in large measure, preordained the eventual outcome of the "gateway" inquiry.

-21-

a safety valve for the extraordinary case."  Schlup, 115 S. Ct. at 870
(O'Connor, J., concurring) (quotations omitted).  If the court's reasoning
prevails, then resourceful counsel will ensure that federal habeas is a never
ending process.[19]

Accordingly, I dissent.  I would affirm the well written opinion of the
district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

This case began as a routine administrative panel matter more than a year ago.  I dissented at that time from the grant of the motion to remand because our court was already properly seized of jurisdiction over the case, and I believed that whatever new matter petitioner wanted to raise should, as a matter of orderly procedure, be raised, if at all, in a new petition in the district court.  I remain of that view and believe that the en banc court should have summarily denied the motion to remand.  I regard the delay in this case caused by the consideration and disposition of that motion as impossible to justify on any ground.

---

[19]Recent experience shows that death penalty habeas cases in which persuasive counsel will be unable to generate new affidavits refuting earlier testimony, even eyewitness accounts, will be few and far between.  Amrine and Schlup, both represented by the same lawyer, have amply demonstrated the predictability of this outcome.  See also Parkus v. Delo, 33 F.3d 933, 936 (8th Cir. 1994) and Wilkins v. Bowersox, 933 F. Supp. 1496, 1502-03 (W.D. Mo. 1996).  As Justice O'Connor has noted, "[a]ffidavits like these are not uncommon, especially in capital cases. . . . It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him.  Experience has shown, however, that such affidavits are to be treated with a fair degree of skepticism."  Herrera, 506 U.S. at 423 (O'Connor, J., concurring).

I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.