# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1466

_____

Donald R. Nash

*Petitioner - Appellant*

v.

Terry Russell

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2015
Filed: November 24, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Donald R. Nash of capital murder in violation of section 565.001 of the Revised Statutes of Missouri (1978) in 2009. Following an unsuccessful appeal to the Missouri Supreme Court, Nash filed this 28 U.S.C. § 2254 habeas corpus petition. He argues that his conviction is not supported by sufficient evidence and his constitutional rights were violated by Missouri's "direct connection

rule," under which the trial court excluded evidence of a third-party's potential guilt. The district court[1] denied the petition, and Nash appeals. We affirm.

## I. Background

On March 11, 1982, Judy Spencer was found dead in a rural area near Salem, Missouri. Her body had been dragged to and dumped in the foundation of an abandoned outhouse about thirty minutes from where her car was found stuck down a steep embankment on the side of a road. An initial police investigation determined Spencer had been strangled with her shoelace, then shot in the neck by a shotgun postmortem. Her postmortem blood alcohol content was 0.18.

At the time of her death, Spencer had been living with her boyfriend, Appellant Nash. Spencer had spent the afternoon and evening of March 10 driving around and drinking with friends. Because Spencer had agreed with Nash to stop drinking, she lied to him about her whereabouts. When Nash learned that Spencer was drinking at Janet Jones's apartment, he went to the apartment and confronted her, saying: "This is the last time you'll ever lie to me, bitch." After Nash left Jones's apartment, Spencer washed her hair in a sink and restyled it. She then went to the home she shared with Nash, where they continued to argue about her drinking and where she changed her clothes. Spencer returned to Jones's apartment and invited Jones to go drinking at bars in Houston, Missouri, more than thirty miles away. Jones declined, and Spencer left the apartment alone around 8:30pm.

Nash told investigators that he had spent the evening of March 10 searching for Spencer in Salem. A witness saw Nash drive past the American Legion Hall around 8:30pm. The State contends Nash told investigators that he returned home

---

[1] The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

shortly thereafter and did not leave until the next morning, but Nash maintains he told a private investigator he continued searching until midnight. A witness saw Nash driving by Jones's apartment complex between 10:00pm and 11:00pm. Nash also called Jones several times to express concern for Spencer and to ask Jones to give him a wake-up call at 6:00am. The next day, Nash continued to search for Spencer in Salem. He also traveled to Houston, Missouri, with Jones in the afternoon to continue searching.

When Nash and Jones returned to Salem, a state trooper informed them that Spencer had been killed. Jones testified that Nash appeared heartbroken. At the hospital, investigators administered a gunshot residue test on Nash. The test results were negative. Shortly after Spencer's death, Nash became involved with another woman. Several months later, Jones recorded a conversation with Nash in which he (1) admitted he was angry with Spencer; (2) said he did not have an alibi for March 10; and (3) maintained he was innocent.

The case remained unsolved for twenty-five years until 2007, when Spencer's sister requested that investigators reopen the investigation. The investigators collected a DNA sample from Nash to compare with DNA evidence found on fingernail clippings taken from Spencer's body in 1982. Nash appeared nervous when the sample was taken and asked to be notified "if I am eliminated" as a suspect. Nash's DNA sample matched one of two DNA profiles identified on Spencer's fingernails (the second profile matched Spencer's DNA). When he was informed of this, Nash said it was not possible and his hands started shaking. Ultimately, Nash was charged with capital murder in violation of section 565.001 of the Revised Statutes of Missouri (1978).

Before trial, the State moved to exclude evidence of a third party's fingerprints found on Spencer's car under the "direct connection rule," which permits the exclusion of evidence of a third-party's guilt unless that evidence "prove[s] that the

other person committed some act directly connecting him with the crime." State v. Nash, 339 S.W.3d 500, 513 (Mo. 2011). The third-party fingerprints belonged to Lambert Anthony Feldman III. Nash alleges Feldman had been seen with Spencer in Salem, Missouri, a few days before her death. In addition, Feldman had an extensive criminal history and was known to carry a shotgun in the trunk of his car at the time of Spencer's murder. He committed suicide using a shotgun in 2008. The court granted the motion to exclude the Feldman evidence.

At trial, the jury considered expert testimony from both sides regarding the presence of Nash's DNA under Spencer's fingernails. In particular, the parties disputed whether Spencer's act of washing her hair would have affected the presence of DNA under her fingernails. The State's expert testified that she "expect[ed] that washing your hair . . . would remove DNA from underneath the fingernails." Nash presented evidence that co-habitants frequently have each other's DNA under their fingernails and that frequent hand washing, even in a hospital setting, would not remove all foreign DNA. The State contended that Nash's DNA got under Spencer's fingernails sometime after she washed her hair and before her death. Nash argued that his DNA was under Spencer's fingernails because they lived together, and it remained there after Spencer washed her hair. The jury also heard evidence as to Spencer and Nash's argument at Jones' apartment and Nash's statements to investigators. Ultimately, the jury found Nash guilty of Spencer's murder, and he was sentenced to life without parole.

On direct appeal of his conviction, Nash raised four issues, contending the trial court erred by: (1) denying his motion to quash the indictment and dismiss on the grounds he cannot be prosecuted under the 1978 murder statute; (2) denying his motion for judgment of acquittal and motion for a new trial on the grounds of insufficient evidence to support his conviction; (3) failing to provide the jury an instruction on circumstantial evidence; and (4) granting the state's motion in limine to exclude evidence of third party guilt in violation of the Sixth Amendment. The

Missouri Supreme Court affirmed Nash's conviction on all grounds. Nash did not file a timely motion for state postconviction relief.

On October 3, 2012, Nash filed the present federal petition for writ of habeas corpus under 28 U.S.C. § 2254. He argues: (1) the evidence was insufficient to support his conviction under Jackson v. Virginia, 443 U.S. 307 (1976), because the state supreme court reached an unreasonable determination of the facts; and (2) the application of the "direct connection rule" regarding the Feldman evidence was an unreasonable application of clearly established Supreme Court precedent because it deprived Nash of a meaningful opportunity to present a complete defense. In later motions to amend his petition, Nash also argued the court should consider new evidence that was not available at trial, including: (1) a DNA test on Spencer's shoe showing an unidentified male DNA profile; (2) a scientific study which tested the effect of washing on the presence of foreign DNA under fingernails, and (3) an expert report concluding that Spencer had Nash's DNA under her fingernails because they lived together.

On his sufficiency of the evidence claim, the district court concluded that Nash's conviction was supported by sufficient evidence under the Jackson standard. In addition, the district court determined his "direct connection rule" claim was procedurally defaulted because on direct appeal Nash challenged the rule as *facially* unconstitutional but now makes an *as-applied* challenge. The district court further concluded that even if the claim were not procedurally defaulted, Nash would not be entitled to relief. Finally, the district court denied Nash's motions to amend his petition to present newly discovered evidence in support of an actual innocence claim. Nash appeals the district court's decisions on all of these issues.

## II. Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief only if "the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States.'" Armstrong v. Hobbs, 698 F.3d 1063, 1066 (8th Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)). In Williams v. Taylor, 529 U.S. 362, 412 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." In addition, a state court decision is an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The AEDPA standard is difficult to meet as it is intended as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). Accordingly, we assume that any facts found by the state court were correct, and the petitioner bears the burden to show us by clear and convincing evidence that such factual conclusions below were incorrect. 28 U.S.C. § 2254(e)(1). We take "only a limited and deferential review of underlying state court decisions." Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011). We review the district court's findings of fact for clear error and its legal conclusions de novo. Id.

## A. Sufficiency of the Evidence

Nash argues that his conviction was not supported by sufficient evidence because no reasonable jury a could have found him guilty by relying on the State's speculative expert testimony and non-DNA evidence.

In <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the Supreme Court articulated a narrow standard of review for questions of sufficiency of the evidence. Under <u>Jackson</u>, a habeas petitioner is entitled to relief if we conclude "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Id.</u> at 324. In applying this standard, we do not re-weigh the evidence, and we must resolve inconsistencies in favor of the prosecution. <u>Id.</u> at 319. Under AEDPA, "we may grant relief only if we find the [Missouri Supreme Court's] conclusion that the evidence satisfied the <u>Jackson</u> sufficiency of the evidence standard 'both incorrect and unreasonable.'" <u>Garrison v. Burt</u>, 637 F.3d 849, 855 (8th Cir. 2011) (quoting <u>Cole v. Roper</u>, 623 F.3d 1183, 1187 (8th Cir. 2010)).

The Missouri Supreme Court noted a number of pieces of evidence that could allow the jury to make inferences that point to Nash's guilt. Specifically, a reasonable juror could have found Nash guilty of Spencer's murder considering: DNA from Nash and Spencer were the only DNA profiles found under Spencer's fingernails; expert testimony that the amount of DNA found would not have come from "low-level contact"; Nash's nervousness when asked for a DNA sample; his reaction when informed that his DNA matched the sample taken from Spencer's fingernails; Nash's statement to Spencer, "That's the last time you'll lie to me bitch"; Nash's inconsistent statements regarding what time he went home on the night of March 10; his request that Jones provide a wake-up call on March 11; and Nash's involvement with another woman shortly after Spencer's death. The district court also relied on this evidence

in concluding the state court did not unreasonably apply the Jackson principle. We agree.

While the jury certainly could have resolved the conflicting evidence in Nash's favor, we are bound by Jackson to view the facts in the light most favorable to the prosecution and defer to the state courts where there is some evidence by which a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. As discussed above, a number of pieces of evidence support the jury's guilty verdict. As such, the Missouri Supreme Court's conclusion that Nash's conviction was supported by sufficient evidence is neither incorrect nor unreasonable. Therefore, Nash is not entitled to habeas relief on this ground.

## B. The Direct Connection Rule

Nash next argues that his Sixth Amendment right to present a complete defense was violated when the trial court excluded the Feldman evidence under Missouri's "direct connection rule." We must first address whether this claim is properly before this Court.

Under AEDPA, a petitioner "must exhaust available state remedies" by "'fairly present[ing]' his claim in each appropriate state court." Baldwin v. Reese, 541 U.S. 27, 29 (2004). In order to "fairly present" a claim, "a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Barrett v. Acevedo, 169 F.3d 1155, 1161–62 (8th Cir. 1999) (en banc). This requirement is not met by "[p]resenting a claim that is merely similar to the federal habeas claim." Id. at 1162. For example, we have previously held that where, on direct appeal, "[a petitioner] challenged the State's use of peremptory strikes generally, but not the strikes of [two black jurors] specifically[,]" the latter claim was

barred for review by a federal habeas court. <u>Williams v. Norris</u>, 576 F.3d 850, 865 (8th Cir. 2009).

In this case, the district court determined that Nash did not meet the requirement to "fairly present" his claim to the state court because Nash presented a *facial* challenge to the "direct connection rule" in state court, then presented an *as-applied* challenge to the rule in federal court. We agree. Nash argues that his claim before the Missouri state courts "could only be [interpreted as] an argument as applied." Appellant's Brief at 51. However, there is no clear indication in Nash's state supreme court brief that he intended to argue the "direct connection rule" violated the U.S. Constitution as it was applied in his case. Further, the Missouri Supreme Court understood Nash's claim as challenging only the constitutionality of the "direct connection rule" under <u>Holmes v. South Carolina</u>, 547 U.S. 319 (2006)—a facial-challenge case. Therefore, we conclude Nash's "direct connection rule" claim is procedurally barred, and we need not reach the merits.

## C. Gateway to Actual Innocence

Nash argues that even if his "direct connection rule" claim is procedurally barred, we can review it because he has presented a "gateway" claim of actual innocence by providing new evidence of Feldman's guilt. <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). Nash contends the new evidence—including unidentified male DNA on Spencer's shoelace, a scientific study which tested the effect of washing on the presence of foreign DNA under fingernails, and an expert report concluding that Spencer had Nash's DNA under her fingernails because they lived together—would be sufficient to show the application of Missouri's "direct connection rule" to his case was unconstitutional.

To obtain review of an otherwise procedurally barred claim, a petitioner must satisfy a two-part test: (1) the "allegations of constitutional error must be supported

with new reliable evidence not available at trial"; and (2) "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing Schlup, 513 U.S. at 327–28). In Schlup, the Court provided several examples of "reliable evidence," including "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Schlup, 513 U.S. at 324. We have further defined "new evidence" as evidence that "was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine, 238 F.3d at 1028; see also Kidd v. Norman, 651 F.3d 947, 951–53 (8th Cir. 2011) (discussing how various circuits have defined "new" and approving of the Amrine definition).

The district court interpreted Nash's motions to amend his petition as asserting a freestanding claim of actual innocence because Nash did not clearly point to a procedurally barred claim. We have recognized that if the Supreme Court were to grant relief on this type of claim, "the threshold . . . would be extraordinarily high [and] would require more convincing proof than the gateway standard." Dansby v. Hobbs, 766 F.3d 809, 816 (8th Cir. 2014) (citation omitted). The district court concluded that Nash did not meet this threshold because his proffered DNA evidence was not "new." In particular, the DNA evidence could have been discovered at trial through due diligence, and the new scientific studies and expert evidence duplicated what was presented at trial. Accordingly, the district court denied Nash's motions to amend his petition.

Before this Court, Nash clearly asserts actual innocence as a gateway claim under Schlup. Even under this less burdensome standard, we agree with the district court: the evidence Nash seeks to add to the record is not "new" in the sense required under Amrine. In addition, a reasonable jury could still weigh the evidence presented at trial, including Nash's DNA under Spencer's fingernails, more heavily than the unidentified male DNA on Spencer's shoe to support a guilty verdict. Similarly, although the scientific studies and expert report raise significant questions about the

-10-

testimony of the State's expert, Nash's jury heard at least some evidence that Spencer picked up Nash's DNA through cohabitation and that hand-washing may not be sufficient to remove DNA from under fingernails. Therefore, we conclude that even considering Nash's newly proffered evidence, a reasonable jury could find Nash guilty. Amrine, 238 F.3d at 1029.

## III. Conclusion

After careful review of the record, we conclude that Nash has not established grounds for federal habeas relief. However, as the district court noted below, the newly presented evidence in this case deserves "serious consideration" in the state courts. Missouri provides a procedure for a prisoner to petition for habeas corpus relief in its courts. See Mo. Sup. Ct. Rule 91. We suggest, without weighing in on the merits, that state court would be a more appropriate forum for Nash's claims. Accordingly, we affirm the judgment of the district court.

_____